**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| PHILIP CURRAN,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>NSTAR ELECTRIC COMPANY, d/b/a  )<br>EVERSOURCE ENERGY,  )<br><br>Defendant.  ) | Civil Action No.<br>25-12839-BEM |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S PARTIAL MOTION TO DISMISS**

**MURPHY, J.**

This is an action arising out of an employment dispute between Plaintiff Philip Curran ("Plaintiff") and his former employer, Defendant NSTAR Electric Company, d/b/a Eversource Energy ("Defendant"). Plaintiff sued Defendant after being terminated from his position in or about late 2023. He brought ten claims against Defendant, including breach of contract, age and disability discrimination, and other state and federal law violations. Before the Court now is Defendant's partial motion to dismiss five claims. For the reasons set forth below, the Court will grant Defendant's motion as to Counts V and VI. Counts IX and X are also dismissed to the extent that they raise claims of retaliation, but not for claims of associational discrimination. Defendant's motion is denied with respect to Count IV.

## I.     Background

### A.     Factual Background

The Court draws the following facts from Plaintiff's second amended complaint, Dkt. 23 ("Complaint" or "Compl."), and accepts them as true for the purposes of this motion.

Plaintiff was an at-will employee of Defendant beginning in 2014. *Id.* ¶¶ 8, 49. Plaintiff alleges that, starting in 2023, his new senior supervisor subjected him to "disparate treatment and harassment" including "physically threatening behavior" and "derogatory slur[s]," such as "old man." *Id.* ¶¶ 11–13. Plaintiff complained to another manager about his new supervisor's conduct, but "nothing was done." *Id.* ¶ 14.

Defendant reprimanded Plaintiff for two separate work-related incidents. First, in September 2023, Plaintiff was involved in a motor vehicle accident, which led to an investigation by Defendant. *Id.* ¶ 15. The investigation included two meetings with Plaintiff's managers, the second of which Plaintiff did not attend. *Id.* ¶¶ 15–16. Plaintiff could not attend the second meeting because he was caring for his son, who lives with non-verbal autism and, during the time of the second meeting, required an MRI "to assess the state of his recovery from pancreatic cancer." *Id.* ¶ 16. Plaintiff gave his managers advance notice that he would be unable to attend the second meeting.[1] *Id.* ¶ 44. Plaintiff alleges he was "criticized" by his supervisor for failing to attend the meeting. *Id.* ¶ 16. Defendant took no disciplinary action against Plaintiff for the motor vehicle accident or for his failure to attend the meeting.

Sometime later, Plaintiff was "terminated for allegedly improperly administering a drug test to a colleague."[2] *Id.* ¶ 18. Plaintiff "inadvertently" provided the wrong date to the colleague for the test. *Id.* He was terminated shortly thereafter "without notice or severance." *Id.* However, other employees before and after his firing also improperly administered drug tests and were not terminated. *Id.* ¶¶ 18–19.

---

[1] It is unclear from the Complaint whether, in giving advance notice of his inability to attend, Plaintiff told his managers *the reason* for his anticipated absence. Compl. ¶ 44.

[2] The Complaint does not state the date Plaintiff improperly administered the drug test or the date of his termination.

**B.**     **Procedural Background**

Plaintiff filed suit in state court on July 8, 2025.  *See generally* Dkt. 1-1.  Plaintiff filed an amended complaint on September 5, 2025.  Dkt. 8-1 at 13.  Defendant removed the case to this Court on October 1, 2025.  Dkt. 1.  On October 29, 2025, Defendant moved to dismiss a subset of Plaintiff's claims.  Dkt. 10.  On November 21, 2025, Plaintiff opposed Defendant's first partial motion to dismiss and simultaneously filed a cross-motion to amend the complaint.  Dkts. 14–15.  On January 8, 2026, this Court granted Plaintiff's cross-motion to amend and denied as moot Defendant's first partial motion to dismiss.  Dkts. 19–20.

On February 6, 2026, Plaintiff filed a second amended complaint, which asserts ten claims against Defendant.  *See generally* Compl.  On March 5, 2026, Defendant moved under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") to dismiss five claims: retaliation under Mass. Gen. Laws ch. 149, § 148C (Count IV); breach of contract (Count V); breach of the implied covenant of good faith and fair dealing (Count VI); associational disability discrimination and retaliation under Mass. Gen. Laws ch. 151B (Count IX); and retaliation under the Americans with Disabilities Act ("ADA") (Count X).[3]  Dkt. 24; *see also* Dkt. 25 ("Memo.").  Plaintiff opposed the motion for partial dismissal on March 30, 2026.  Dkt. 29 ("Opp.").  The Court heard argument on May 13, 2026, and took the motion under advisement.

**II.**     **Standard of Review**

Courts analyzing claims under Rule 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the

---

[3] Defendant "is not seeking to dismiss Count X to the extent Plaintiff alleges that he was terminated from employment . . . specifically because of his association with his disabled son."  Memo. at 11.

pleader's favor." *Grajales v. P.R. Ports Authority*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, a plaintiff need not demonstrate that he is likely to prevail, but "[his] claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice." *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

## III.    Discussion

### A.    Retaliation Under Massachusetts Earned Sick Time Law (Count IV)

Plaintiff alleges that Defendant retaliated against him by taking adverse employment action for his use of earned sick time in violation of Mass. Gen. Laws ch. 149, § 148C, the Massachusetts Earned Sick Time Law. Compl. ¶¶ 42–46. Defendant makes two arguments for dismissal: (1) Plaintiff fails to state the relevant provision of Massachusetts law, and (2) Plaintiff fails to allege a causal connection between his use of sick time and his firing. Memo. at 6. The Court finds both arguments insufficient.

Defendant first argues that "Plaintiff does not state which provision of [Mass. Gen. Laws ch. 149, § 148C] he relies upon for his retaliation claim." Memo. at 6. However, under Federal Rule of Civil Procedure 8, a complaint's "failure to cite to the proper statute is not fatal to the claim at the pleading stage." *Jones v. Hanna*, 2016 WL 11781884, at *1 (1st Cir. Mar. 28, 2016) (citing *Morales-Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003)). Plaintiff alleges he took time off "to care for the serious health condition of his disabled child" and, in so doing, "exercis[ed] his rights under the Mass. Sick Leave Law." Compl. ¶¶ 43–44. Under Mass. Gen. Laws ch. 149, § 148C(h), an employer may not "interfere with, restrain, or deny the exercise of, or the attempt to exercise" the use of earned sick time including by "using the taking of earned

4

sick time under this section as a negative factor in any employment action such as . . . termination." This provision "provides that all covered employees may use their earned sick time without fear of adverse consequences." *Samah v. Takeda Pharms. U.S.A., Inc.*, 2026 WL 63399, at *7 (D. Mass. Jan. 8, 2026) (internal quotation marks omitted) (quoting *Lin v. CGIT Sys., Inc.*, 2023 WL 12023463, at *17 (D. Mass. Sept. 29, 2023)). This section appears most applicable to Plaintiff's "retaliation" claim as pled.[4]

As to the substance of the allegations, Defendant further argues that the Complaint "alleges no causal connection" between Plaintiff's alleged use of earned sick time and his ultimate termination. Memo. at 6. But Plaintiff specifically alleges he was terminated because "his managers were displeased" with his "need" to use sick time, which conflicted with a meeting. Compl. ¶ 45. Plaintiff's managers also "criticized" him for not attending that meeting and he was later fired. *Id.* ¶¶ 16, 18. Plaintiff further alleges that Defendant's given reason for his termination, the improper drug test administration, was "flatly pretextual" because others, Plaintiff claims, committed similar infractions but were not terminated. *Id.* ¶ 19.

Read altogether—and making reasonable inferences in "the light most favorable to [P]laintiff," *Yacubian v. United States*, 750 F.3d 100, 107 (1st Cir. 2014)—these allegations plausibly support Plaintiff's claim that his use of sick time was used as a "negative factor" in his ultimate termination. Whether Plaintiff actually used sick time for his time off in September 2023 will be borne out in discovery. Resolving that dispute at the pleading stage would be premature. *See N.R. by and through S.R. v. Raytheon Comp.*, 24 F.4th 740, 749 (1st Cir. 2022) (noting "well-

---

[4] Defendant also suggests Plaintiff may be suing under Mass. Gen. Laws ch. 149, § 148C(i). Memo. at 6. However, there is no allegation that Defendant took any action against Plaintiff for his opposition to practices which he believed were unlawful. *See* Mass Gen. Laws ch. 149, § 148C(i). Furthermore, there are no facts alleged that Plaintiff "supported the exercise of rights of another employee." *Id.* Mass. Gen. Laws ch. 149, § 148C(i) is therefore inapplicable to these pleadings.

articulated" claims are "all [a plaintiff] needs to do to get to discovery, where he can then find out whether he's actually right."). Plaintiff thus plausibly states a claim for retaliation under Mass. Gen. Laws ch. 149, § 148C(h), and Defendant's partial motion to dismiss is denied with respect to Count IV.

**B.     <u>Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing (Counts V & VI)</u>**

Plaintiff alleges that Defendant breached Plaintiff's employment contract and the implied covenant of good faith and fair dealing for failing to pay Plaintiff in full for wages and overtime. Compl. ¶¶ 38–46. Defendant argues Plaintiff fails to "allege[] facts which, if true, would support the existence of a valid contract." Memo. at 7. Defendant further argues that Plaintiff's at-will employment status does not entitle him to relief under the implied covenant because courts recognize such claims against at-will employees "only in limited circumstances." *Id.*

Plaintiff concedes he was an "at will" employee of Defendant, and his employment was "governed by terms" that he would be paid regularly, on time, and upon termination, paid all amounts due and owing to him. Compl. ¶ 49. Plaintiff does not provide a written contract but argues "no written agreement is necessary to show that a contract binds the parties." Opp. at 3. In the absence of a written contract with a definite period of employment, Massachusetts courts consider employees "at will." *Beaupre v. Seacost Sales, Inc.*, 507 F. Supp. 3d 353, 361 (D. Mass. 2020). As Defendant argues, subject to two limited exceptions, in Massachusetts "an at-will employee cannot succeed on a breach of contract claim arising from a change in the terms and conditions of [his] employment." *Merricks v. Savers, Inc.*, 2012 WL 32579, at *5 (D. Mass. Jan. 6, 2012).

The first exception is for a violation of public policy. If the method of termination is in "violation of a clearly established public policy," courts may find breach of contract for at-will

employees.  *Bergeson v. Franchi*, 783 F. Supp. 713, 718 (D. Mass. 1992).  However, where the legislature has already provided a comprehensive remedial statutory scheme, Massachusetts courts are "hesitant . . . to create a new," duplicative common law cause of action for a violation of public policy.  *Id.* (citing *Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 512 (1985) *aff'd* 397 Mass. 1004 (1986)).  Plaintiff's breach of contract claim arises out of alleged unpaid wages and overtime hours.  Compl. ¶¶ 49–50.  Even if these alleged infractions constitute violations of public policy, the legislature already provided comprehensive statutes to remedy unpaid wages and overtime hours—and Plaintiff has obtained a right to sue letter from the Massachusetts Attorney General to bring claims under those very statutes.  *See* Compl. ¶¶ 24-35 (asserting as Counts I and II claims under Mass. Gen. Laws ch. 149, § 148 for failure to pay wages and under Mass. Gen. Laws ch. 151, § 1B for failure to pay overtime compensation, respectively).  Therefore, Plaintiff's breach of contract claim under the first at-will employee exception fails.

The second exception, unjust enrichment, is also considered the only cognizable breach of the implied covenant of good faith and fair dealing for at-will employees.  *Myers v. Integra LifeSciences Corp.*, 788 F. Supp. 3d 161, 166 (D. Mass. 2025).  Count VI, Plaintiff's claim for a breach of the implied covenant of good faith and fair dealing therefore falls under this exception. Massachusetts courts impose liability under the unjust enrichment exception only in cases where the employer would "unjustly benefit financially by depriving the employee of future compensation earned for past services." *Bergeson*, 783 F. Supp at 717 (citing *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96, 100–05 (1977)).  Plaintiff makes no allegation that he was terminated for the purpose of depriving him of future compensation, such as pending sales commissions or stock options. *See e.g.*, *Fortune*, 373 Mass. at 102 (sales commissions); *Myers*, 788 F. Supp. 3d at 166 (stock options).  Rather, Plaintiff alleges he was terminated as part of a

pattern of unlawful discrimination and retaliation.  Compl. ¶ 21 (alleging the failure to pay overtime was "further evidence of discrimination and retaliation").  A mere allegation of bad faith in the termination of an at-will employee, "without more, is not sufficient to trigger liability" under the implied covenant of good faith and fair dealing.  *Bergeson*, 783 F. Supp. at 717.  Plaintiff therefore fails to state a claim under the unjust enrichment exception and the implied covenant of good faith and fair dealing.[5]

Accordingly, Plaintiff fails to state a claim for breach of contract and the implied covenant of good faith and fair dealing and the Court grants Defendant's motion as to Counts V and VI.

### C.    Mass. Gen. Laws ch. 151B (Count IX)

Mass. Gen Laws ch. 151B ("Chapter 151B"), the Massachusetts antidiscrimination statute, "bars employment discrimination on the basis of handicap."  *Flagg v. AliMed, Inc.*, 466 Mass. 23, 24 (2013).  Defendant suggests that Plaintiff raises two distinct claims under Chapter 151B—one for associational discrimination and the other for retaliation.  Memo. at 9.  Defendant is correct that Massachusetts courts treat a Chapter 151B retaliation claim as "separate and distinct from a claim of discrimination," *Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382, 405 (2016), but in the Complaint, Plaintiff combines both into one Chapter 151B claim. Compl. ¶¶ 71–75.

Nevertheless, even assuming arguendo Plaintiff has alleged a distinct retaliation claim, the Complaint failed to properly state such a claim.  While Plaintiff does not cite a specific provision, retaliation claims under Chapter 151B are frequently brought under Mass. Gen. Laws ch. 151B, §

---

[5] As noted earlier, however, Plaintiff may still seek relief for his alleged unpaid wages and overtime through Counts I and II of the Complaint.

4(4) ("Section 4(4)").[6] *See e.g.*, *Clorite v. Somerset Access Television, Inc.*, 2014 WL 6983350, at *3 (D. Mass Dec. 9, 2014).  Section 4(4) is triggered only when an employee "opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding."  Mass. Gen. Laws ch. 151B, § 4(4).  There is no allegation that Plaintiff filed a complaint or otherwise opposed any action taken by Defendant related to Plaintiff's caregiving responsibilities.  Therefore, Plaintiff has failed to state a claim under Section 4(4) for retaliation.

Turning to the associational discrimination claim, Plaintiff alleges that his status as the primary caregiver for his son entitles him to protection from discrimination under Chapter 151B. Compl. ¶ 73.  Defendant argues that associational discrimination claims under Massachusetts law do not extend to Plaintiff's role as a caregiver.  Memo. at 9–11.

The parties both identified *Flagg v. AliMed*, 466 Mass. 23 (2013) as controlling on this point.  Memo. at 9; Opp. at 4.  In *Flagg*, the Massachusetts Supreme Judicial Court recognized the validity of an associational discrimination claim under Chapter 151B after the plaintiff—himself not disabled—was nevertheless fired by his employer based on "discriminatory animus directed towards his handicapped wife."  466 Mass. at 27, 30 ("[W]e think that the concept of associational discrimination also furthers the more general purposes of ch. 151B as a wide-ranging law, seek[ing] . . . removal of artificial, arbitrary, and unnecessary barriers to full participation in the workplace that are based on discrimination." (internal quotation marks omitted)).  Plaintiff raises a similar claim in his Complaint: he, the primary caregiver for his disabled son, was allegedly terminated because of his son's disability and his accompanying caregiving responsibilities. Compl. ¶ 73.

---

[6] At the pleading stage, plaintiffs need not cite specific subsections of law to survive a motion to dismiss. *See supra* Section III.A.  Neither party has argued or established that a different section would save this claim.

Defendant, for its part, directs the Court's attention to Justice Gants's concurrence, which would have limited viable associational discrimination claims to those related only to healthcare costs.[7]  Memo. at 9–10 (citing *Flagg*, 466 Mass. at 39 (Gants, J., concurring)).[8]  However, in the years since, courts have followed the *Flagg* majority's expansive approach and permitted associational discrimination claims in a variety of contexts beyond healthcare costs.  *See e.g.*, *Fenn v. Mansfield Bank*, 2015 WL 628560, at *3 (D. Mass. Feb. 12, 2015) (denying motion to dismiss where plaintiff alleged "he was fired *because* of his association with his disabled wife, not merely because he asked for an accommodation." (emphasis in original)); *LaBonte v. Riverside Park Enters., Inc.* 2022 WL 17253663, at *5 (D. Mass. Nov. 28, 2022) (extending *Flagg*'s holding beyond Chapter 151B to also cover the Massachusetts Public Accommodations Law); *Baer v. Montachusett Reg'l Tech. Sch. Dist.*, 380 F. Supp. 3d 143, 153 (D. Mass. 2019) (assuming, arguendo, that *Flagg* implies Massachusetts courts would also recognize "gender-based associational discrimination").

Under *Flagg*, "[t]o establish a claim for associational discrimination, a plaintiff must show that 'he was a qualified, adequately performing employee' who was terminated 'because of his association' with a person with a disability."  *Dantowitz v. Dexter Southfield, Inc.*, 2022 WL 4111910, at *6 (D. Mass. Sept. 8, 2022) (quoting *Flagg*, 466 Mass. at 37).  Here, the Complaint plausibly establishes that claim.  Accordingly, Count IX is dismissed to the extent that it raises a

---

[7] Though potentially persuasive, a concurring opinion is not binding authority.  *See Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 51 (1st Cir. 2024) ("This argument treats the concurring opinion as if it were binding authority."), *cert. denied*, 145 S. Ct. 2771 (2025) (mem.).

[8] Defendant additionally cites to *Lin v. CGIT Systems, Inc.*, 2021 WL 4295863 (D. Mass. Sept. 21, 2021). Memo. at 10.  But the court in *Lin* focused on whether *Flagg*'s holding entitles caregiver employees to a reasonable accommodation.  *Lin*, 2021 WL 4295863, at *5.  Here, Plaintiff is not arguing he was entitled to a reasonable accommodation.

retaliation claim against Defendant, but is not dismissed for any claim of associational discrimination under Chapter 151B.

### D. The Americans with Disabilities Act (Count X)

Defendant only moves to dismiss Count X to the extent it makes a claim for retaliation because "no claim exists for retaliation in these circumstances." Memo. at 11. The ADA "prohibit[s] retaliation against any person, whether disabled or not, for opposing disability-based discrimination made unlawful by [the ADA]." *D.B. ex rel Elizabeth B. v. Esposito*, 675 F.3d 26, 40 (1st Cir. 2012); *see also* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]."). To make out a prima facie case for retaliation under the ADA, Plaintiff must allege that (1) he engaged in protected activity under the ADA, (2) Defendant subjected him to some adverse action, and (3) there was a causal connection between the protected conduct and the adverse action. *See Snell v. Neville*, 998 F.3d 474, 487 (1st Cir. 2021). Examples of protected actions include filing grievances or seeking disability accommodations. *See e.g.*, *id.* (filing administrative complaints); *D.B.*, 675 F.3d at 41 (advocating for accommodations for disabled students). Mere association with disabled individuals, however, does not constitute protected conduct. *Oliveras-Sifre v. P.R. Dept. of Health*, 214 F.3d 23, 27 (1st Cir. 2000) (affirming dismissal of an ADA retaliation claim because plaintiffs' mere association with disabled individuals did not constitute protected conduct). Plaintiff has failed to allege that he engaged in any protected activity cognizable under the ADA's antiretaliation provision. *See supra* Section III.C. To the extent Count X raises a retaliation claim against Defendant, it is therefore dismissed. Count X is not dismissed, however, for any claim of associational discrimination under the ADA.

11

## IV.    <u>Conclusion</u>

For the foregoing reasons, Defendant's partial motion to dismiss is GRANTED in part and DENIED in part.  Counts V and VI are dismissed.  Counts IX and X are dismissed to the extent that they raise claims of retaliation, but not for claims of associational discrimination.  Defendant's motion is denied with respect to Count IV.

**So Ordered.**

/s/ Brian E. Murphy\
Brian E. Murphy\
Judge, United States District Court

Dated: May 19, 2026